UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E-SMART TECHNOLOGIES, INC., et al., | No. C 06-05528 MHP |
| Plaintiffs, | |
| v. | **MEMORANDUM & ORDER** |
| WAYNE DRIZIN, et al., | **Re: Defendants' Motion to Amend Protective Order; Defendants' Motion to Amend Counterclaims** |
| Defendants. | |

On September 11, 2006 plaintiffs E-Smart Technologies, Inc., et al, ("E-Smart") filed suit against defendants Wayne Drizin, et al., ("defendants") alleging violations of various laws. Defendants have now moved to amend the protective order entered into by the parties and to amend their counterclaims. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

Motion to Modify Protective Order

BACKGROUND

This case involves an intellectual property dispute between parties competing in the biometric smart card industry. In order to protect their respective intellectual property, parties entered into a protective order on February 11, 2007. See Docket No. 72. This protective order restricts disclosure of highly confidential information only to parties' outside counsel and any necessary experts or court personnel. Id. Defendants now contend one of E-Smart's attorneys, Ms. Maranda Fritz, is intimately involved in E-Smart's business decisions and, in essence, operates as E-Smart's in-house counsel. Consequently, they seek to bar Ms. Fritz from access to their highly

1  confidential information since they contend Ms. Fritz can use the information to benefit defendants'
2  competitors, namely, the plaintiffs.

3  Ms. Fritz is employed with Hinshaw & Culbertson LLP. In this capacity, she has served as
4  E-Smart's outside counsel for over five years and has represented E-Smart in a variety of litigation
5  matters. E-Smart has other counsel with respect to patent prosecution and corporate matters. Fritz
6  Dec., ¶ 2.

7

8  LEGAL STANDARD

9  When evaluating whether counsel should be barred from access to proprietary information, a
10 court should examine the factual circumstances of *any* counsel's relationship to the party demanding
11 access. U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984). A crucial factor is
12 whether in-house counsel was involved in "competitive decisionmaking"—advising on decisions
13 about pricing or design "made in light of similar or corresponding information about a competitor."
14 Id. at 1468 n. 3. Consequently, the district court must "examine factually all the risks and
15 safeguards surrounding inadvertent disclosure by any counsel, whether in-house or retained."
16 Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992).

17

18 DISCUSSION

19 Defendants claim the following statements demonstrate that Ms. Fritz is E-Smart's business
20 advisor. During a deposition, when asked if she was a businessman for E-Smart and whether she
21 was functioning as counsel when she wrote certain e-mails, she stated:

22 I think we all understand that there are items with respect to business matters that I'm
   at – that I'm included on for reasons that involve the extent to which I'm considered
23 to be someone that has sound judgment.

24 So no matter how many times you want to make statements that are absolutely
   bizarre, it doesn't change the normal kind of interaction that can occur between a
25 client and a lawyer with whom they deal on a regular and ongoing basis.

26 Motion to Modify Protective Order, Exh. C (hereinafter "Barrett Dep.") at 648:8–17.[1] Ms. Fritz has
27 also referred to E-Smart's engineers as "our engineers" and referred to E-Smart's technology as "our
28 technology." Id., Exh. D. These statements do not transform Ms. Fritz from E-Smart's outside

2

counsel to their business advisor. A generic statement regarding her inclusion in "business matters" and her reference to her client's employees and technology in an inclusive fashion proves nothing about her involvement in E-Smart's business decisions. Indeed, Ms. Fritz also states her interaction with E-Smart is that of "a client and a lawyer." Id., Exh. C at 648:14–17.

Defendants claim that Ms. Fritz actively participates in business negotiations and transactions for E-Smart, including licensing agreements, because in an e-mail to the special master, Ms. Fritz stated that she apologizes for her delay in responding and that she had been "traveling and devoting extensive time to closing certain transactions involving the Company." Id., Exh. B. Defendants' conclusion regarding business negotiations and licensing agreements is nowhere demonstrated by this statement.

Defendants claim that Ms. Fritz has personal knowledge of and is involved in E-Smart's marketing strategies because she testified that: 1) "This marketing activity is damaging the Company on a number of levels. The Company is damaged by having its product presented, without authorization, by two convicted felons, particularly in its dealings with the United States government on matters which pertain to national security;" 2) "Further, [defendants] are acting without coordination or communication from the Company, which in [sic] itself continuously engaging in marketing activities. [Defendants' activity] creates the likelihood that these competing efforts will collide, interfering with e-Smart's corporate opportunities and making the Company appear disorganized and dysfunctional." Id., Exh. E, ¶¶ 24–25. These statements amount to advocacy in a declaration for a temporary restraining order ("TRO"). Statements about the consequences of a denial of the TRO do not demonstrate that Ms. Fritz is a competitive decision maker for E-Smart. Furthermore, these statements were made before the protective order was stipulated to by the parties.

Defendants claim that Ms. Fritz has personal knowledge of E-Smart's business plans because she testified that "having worked with e-Smart for more than five years, I am now seeing its former consultant, Wayne Drizin, engaging in unlawful conduct that may destroy the ability of the Company to pursue its business plan. . . . He is pursuing the corporate opportunities that were developed by and through e-Smart, and he is taking steps to deliver e-Smart's own technology to one of e-Smart's customers within the next week." Id., Exh. F, ¶ 1. Again, a supplemental

3

1  declaration that clarifies the consequences of a denial of the TRO does not demonstrate that Ms.
2  Fritz is a competitive decision maker for E-Smart.  Moreover, these statements were also made
3  before the protective order was stipulated to by the parties.

4      Defendants claim that Ms. Fritz has personal knowledge of e-Smart's customer base because
5  she testified that: 1) "[Drizin] is taking steps to deliver e-Smart's own technology to one of
6  e-Smart's customers," id.; 2) "e-Smart had spent considerable time and resources in its discussions
7  with [a bank, with which defendants were interfering],"[2] id., ¶ 3; and 3) "[i]f Mr. Drizin and his
8  associates are permitted to deliver that product, it will irreparably damage e-Smart's credibility and
9  ability to do business throughout that region," id., ¶ 5.  These statements, which range from specific
10 accusations to a generic statement, do not demonstrate any knowledge of E-Smart's overall customer
11 base, nor do they demonstrate that Ms. Fritz is a competitive decision maker for E-Smart.
12 Furthermore, these statements were also made before the protective order was stipulated to by the
13 parties.

14     E-Smart's former Chief Operating Officer testified that Ms. Fritz is E-Smart's "corporate
15 counsel" because she had reviewed E-Smart's form 10-K and suggested that E-Smart not make
16 multiple simultaneous changes to the document.  Barrett Dec., Exh. 1 (hereinafter "Conde Dep.") at
17 640:18–20.  This statement does not demonstrate that Ms. Fritz is a competitive decision maker.
18 Indeed, Ms. Fritz could have reviewed the form with an eye toward potential litigation.
19 Furthermore, one ex-employee's view of Ms. Fritz as "corporate" counsel has little or no probative
20 value.  E-Smart's Business Plan also describes Ms. Fritz as "corporate counsel" in its section on
21 management.  Id., Exh. 6 at 16.  Apparently, defendants' counsel, Stoel Rives LLP, would like to
22 have had Ms. Fritz, who represents the *corporation* E-Smart, listed as "litigation counsel," since any
23 other designation purportedly makes her a competitive decision maker.  Similarly, the fact that Ms.
24 Fritz was in charge of drafting the section on "Corporate Organization and Structure" in the business
25 plan, id. at 14, only demonstrates her knowledge of the corporation's organization and structure, not
26 her involvement in decision making.

27     Ms. Fritz has also described herself as E-Smart's "special securities counsel" when providing
28 an opinion letter regarding whether certain shares may be sold by certain individuals and entities.

4

United States District Court
For the Northern District of California

Id., Exh. 17 at 1. It is unclear to the court how this demonstrates that Ms. Fritz is a competitive decision maker for E-Smart. Defendants claim that e-mails which state that Ms. Fritz will draft documents related to a bridge loan of $1 million show she is a competitive decision maker. Id., Exh. 9. This is nonsense—Ms. Fritz is E-Smart's outside counsel and, in that capacity, will be drafting legal documents. Defendants cannot show that Ms. Fritz was involved in the decision to apply for the loan. Similarly, an e-mail stating that Ms. Fritz's client, E-Smart, will "e-mail [Ms. Fritz] regarding the [non-objecting beneficial owners] list," id., Exh. 16, does not demonstrate competitive decision making. Furthermore, statements by others that Ms. Fritz was right in stating that E-Smart's "major patent was allowed on June 11" demonstrate absolutely nothing with respect to her decision making role, if any. Id., Exh. 2. Similarly, her statement, made before the protective order was stipulated to, that "all intellectual property at issue is owned by IVI or one of its subsidiaries," Motion to Modify Protective Order, Exh. F, demonstrates vigorous advocacy, not decision making.

Finally, defendants contend, without documentary evidence, that Ms. Fritz owns a large number of E-Smart shares, which somehow demonstrates she participates in E-Smart's sales, marketing and financing decisions. This logical leap comes with no factual support whatsoever. Defendants also point to various communications and documents that are sent to Ms. Fritz by E-Smart. See id., Exh's. 3–5, 7, 8, 7, 13, 14. This act, whereby E-Smart carbon copies its outside counsel on communications is defendants' alleged proof of competitive decision making. None of these communications were directed at Ms. Fritz nor do any of the communications demonstrate she was involved in the decision making. Indeed, defendants can point to no communication where Ms. Fritz discussed strategy or provided her input on the same.

In their reply brief, defendants present other statements made by Ms. Fritz in her September 6, 2006 declaration. See Motion to Modify Protective Order, Exh. F, ¶¶ 1, 3, 16, 21, 24. These arguments should have been brought in the defendants' opening brief along with other arguments related to statements made in that declaration. Furthermore, these statements were all made before the protective order was stipulated to by the parties. Even on the merits, all statements referred to by defendants are merely counsel's statements regarding her activities with respect to this action and none of them demonstrate competitive decision making.

5

The protective order talks in terms of outside counsel. Indeed, it defines the term "outside counsel" and specifically allows them to view confidential materials. See Docket No. 72, ¶¶ 1.10, 3.2, 3.3. There is only one exception in the protective order, which refers to patents and does not apply here. Id., ¶ 3.3(a). Since no showing has been made that Ms. Fritz is not proper outside counsel, defendants' motion is without merit. Defendants have shown, at best, that Ms. Fritz engages in certain activities that may be considered the province of "corporate lawyers" and not "litigation counsel." Not a shred of evidence exists that Ms. Fritz is a competitive decision maker for E-Smart. Consequently, defendants' motion to modify the protective order is DENIED.

## Motion to Amend Counterclaims

BACKGROUND

Mary Grace, the current Chief Executive Officer ("CEO") of E-Smart, and E-Smart's lead inventor, Tamio Saito, were some of the founders of E-Smart. As of spring 2006, defendant Gardiner was a subcontractor who had worked with the company in relation to the manufacture of E-Smart products.

Around April 2006, defendant Drizin and Tamio Saito ("Saito") resigned from their positions with E-Smart and IVI Smart Technologies Inc. ("IVI"). Saito, also the Chief Executive Officer of Big Bang Technologies, Inc. ("BBT"), severed his and BBT's relationship with E-Smart and IVI. Subsequently, Saito contracted with IDSmart, a company managed by Gardiner, to provide research and development services in connection with the development and manufacture of biometric smart card products by IDSmart. Saito even submitted declarations supporting defendants' position at the beginning of this litigation. Saito was E-Smart's lead inventor and his services provided IDsmart with years of relevant experience in the biometric card industry.

In early 2007, Saito terminated his and BBT's agreements with the Gardiner companies and returned to the employ of E-Smart and IVI. Defendants allege that Saito took with him intellectual property that belonged to the Gardiner companies. Saito also now allegedly contradicts the statements he previously made on behalf of defendants.

1  Since Saito's return to E-Smart, defendants have continued to contact Saito. Gardiner
2  allegedly sent Saito an e-mail on February 7, 2008 threatening litigation. Fritz Dec., ¶ 10. Ms. Fritz
3  contacted defendants' counsel to request that Gardiner stop attempting to communicate with Saito as
4  he is represented by counsel. Id. Counsel rejected that request and Gardiner went to the E-Smart
5  facility in Seoul, South Korea to see Saito on February 14, 2008. Id., ¶ 11. Saito refused to see him.
6  Id.

7  Concurrently, Ms. Grace has allegedly been defaming defendants and their respective
8  corporations.

9  Defendants now seek to amend their counterclaims to: 1) claim indemnification from BBT
10 and Saito for claims asserted by plaintiffs against defendants; 2) assert independent breach of
11 contract claims against BBT and Saito; 3) join Mary Grace as a counterclaim defendant based on her
12 alleged intentional tortuous acts; and 4) supplement previously pled matters with recent material
13 events.

## LEGAL STANDARD

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleadings by leave of the court, "and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has endorsed a liberal reading of this rule, even when the proposed amendment states an alternative theory of recovery, stating that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." Foman v. Davis, 371 U. S. 178, 182 (1962).

An amendment should be allowed unless the non-movant shows: 1) undue delay; 2) bad faith; 3) dilatory motives on the part of the movant; 4) substantial prejudice to the non-movant; or 5) that the amendment would be futile. Howrey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973); see also AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946 (9th Cir. 2006) (leave to amend should be denied where the amendment: 1) prejudices the opposing party; 2) is sought in bad faith; 3) produces an undue delay in litigation; or 4) is futile.).

7

I.     Indemnification Claim against Third Party

Rule 14(a) of the Federal Rules of Civil Procedure allows a defendant, as a third-party plaintiff, to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a).

II.    Independent Claims against Same Third Party

Rule 18(a) of the Federal Rules of Civil Procedure provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

III.   Adding Party to Counter-Claim

Federal Rule of Civil Procedure 13(h) states that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim." Rule 20(a)(2), in turn, allows defendant-claimants to join other parties to the action as counterclaim-defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

IV.    Supplement Previously Pled Matters

Rule 15(d) of the Federal Rules of Civil Procedure provides that "[u]pon motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

DISCUSSION

I.     Indemnification Claim against Third Party

Defendants seek indemnification from Saito and BBT for the claims asserted against defendants by plaintiffs. Specifically, they seek contractual indemnity from BBT and equitable

8

1  indemnity from Saito for any liability they have caused the defendants to incur to plaintiffs. These
2  indemnity claims are allegedly derivatively based on plaintiffs' original claims.

3  Defendants claim they timely moved to amend their counterclaims upon learning of Saito's
4  alleged wrongdoing. They do not state when they discovered such wrongdoing. Saito and BBT left
5  defendants' employ in early 2007. This motion to amend counterclaims was filed one year later.
6  Indeed, it seems that as late as February 2008, defendants were attempting to woo Saito back and
7  filed suit only when their attempts proved futile. Defendants' perfunctory and conclusory assertions
8  that they timely moved to amend their counterclaims are inadequate.

9  The delay in amending counterclaims demonstrates both bad faith and dilatory litigation
10 tactics—defendants have not rebutted either. Indeed, the addition of Saito and BBT seems intended
11 to harass. Furthermore, Saito and BBT would not be liable for plaintiffs' allegation that defendants
12 had specific knowledge of the confidential nature of E-Smart's technology and nevertheless enticed
13 Saito to work for them in order to misappropriate E-Smart's technology.

14 Defendants state their claims against Saito have no bearing on whether E-Smart could
15 reasonably identify the trade secrets it claims were misappropriated. Nevertheless, they seem to also
16 be arguing that they could not have filed suit against Saito and BBT earlier because they did not
17 know what trade secrets were being asserted by plaintiffs. Defendants' delay based on plaintiff's
18 alleged inability to identify the trade secrets at issue, however, does not follow. If defendants did
19 not themselves misappropriate the trade secrets, then whatever indemnification claim existed was
20 ripe at the time they were sued. No demonstration has been made that new facts have recently come
21 to light. In any event, the indemnification claim, in addition to the breach of contract and
22 misappropriation claims, were certainly ripe when Saito left defendants' employ to return to E-
23 Smart. It is unclear what new facts have emerged within the last year that helped defendants
24 determine whether or not to state a claim against Saito and BBT.

25 Furthermore, indemnification is not an issue that arises until judgment or settlement. The
26 indemnification claims can therefore be brought at the conclusion of this action. Consequently, the
27 proposed amendment to add Saito and BBT for indemnification purposes is DENIED.
28

9

## II. Independent Claims against Same Third Party

Defendants seek leave to add a breach of contract claim against Saito and BBT into the third-party complaint. They claim Saito failed to maintain confidences, disclose inventions and assign rights to inventions as required by contract. They further claim Saito solicited IDsmart employees, in violation of the non-solicitation provision in the contract. They argue that since Saito and BBT are proper third-party defendants to defendants' indemnification claims, joinder of defendants' permissive claim is proper under Federal Rule of Civil Procedure 18(a). When bringing this breach of contract claim, defendants also wish to add another third party plaintiff, IDsmart.

Since the court has held above that Saito and BBT may not properly be joined in this action, joinder of permissive claims may not be had either. Consequently, defendants' request to add breach of contract claims against Saito and BBT and to add IDsmart as an additional third-party plaintiff is DENIED.

## III. Adding Party to Counter-Claim

Defendants seek to join Mary Grace as a counterclaim defendant for claims of defamation, injurious falsehood and tortious interference with existing and prospective economic relations. These claims are jointly asserted against Ms. Grace, E-Smart and IVI. Consequently, defendants claim, they arise out of the same occurrence and present common questions of law and fact.

With respect to the defamation and injurious falsehood counterclaims, defendants allege Ms. Grace made intentionally defamatory statements regarding defendants Drizin and Gardiner in her individual capacity and that those defamatory statements were ratified by E-Smart and IVI. Similarly, they allege that both Ms. Grace and E-Smart acted in concert to destroy Drizin's and Gardiner's business interests and opportunities.

Defendants, however, made similar factual allegations in their original counterclaims and neglected to add Ms. Grace as a counterclaim defendant. They have not provided any explanation for the delay. The court is unwilling to further expend judicial resources on the ongoing saga of allegedly unlawful statements made by the parties to this action. Consequently, the motion to add a party to the counter-claim is DENIED.

10

IV.     Supplement Previously Pled Matters

According to defendants, paragraphs 50–55, 59–60, 66-71[3] and 134–36 of the amended counterclaims describe, respectively, the following: 1) Gardiner's efforts to reorganize his companies after this action commenced; 2) Saito's return to the employ of E-Smart and IVI; 3) recent allegedly defamatory public statements made by Mary Grace and E-Smart; and 4) more fully describe the factual basis for Gardiner's claim for rescission of certain of IVI's patents based on recent events.

As discussed above, the issues with respect to Mr. Saito may not be pled. Paragraphs 50–55, 59–60 and 134–36 all discuss Mr. Saito. The statements related to Ms. Grace may not be pled either, also as discussed above. These are discussed in paragraphs 67–72 of the amended counterclaim. Consequently, defendants' motion to amend their counterclaim is DENIED with respect to the above paragraphs.

Plaintiffs have demonstrated that many changes in the proposed pleadings, however insignificant, were made in other paragraphs of the pleadings. Without an explanation regarding the purpose or scope of the changes, the court will not allow such changes. Changes, however small, to all other paragraphs in the pleadings are DENIED.

CONCLUSION

Defendants' motion to amend the protective order is DENIED. Defendants' motion to amend counterclaims is DENIED in its entirety.

IT IS SO ORDERED.

Dated: April 30, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11

**ENDNOTES**

1. The attachments to the motion are not presented by way of a sworn declaration, as required by the local rules. As such, the court has the authority to completely disregard the attachments.

2. The court does not look kindly upon quotes in defendants' brief that are modified to support defendants' position, but are nevertheless represented as direct quotes.

3. This numbering appears to be in error since the relevant paragraphs are 67 through 72.