United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E-SMART TECHNOLOGIES, INC., et al., | No. C 06-05528 MHP |
| Plaintiffs, | |
| v. | **MEMORANDUM & ORDER** |
| WAYNE DRIZIN, et al., | **Re: Defendants' Motion for Partial Summary Judgment; Defense Counsel's Motion to Withdraw as Counsel** |
| Defendants. | |

On September 11, 2006, E-Smart Technologies, Inc., and IVI Smart Technologies, Inc., (collectively "plaintiffs") filed suit against defendants Wayne Drizin, Michael Gardiner, Electronic Plastics Corporation, and A Card Company (collectively "defendants"), alleging violations of California trade secrets law, among several other causes of action. Defendants have now moved for partial summary judgment. Separately, the defendants' attorneys have moved for permission to withdraw as counsel. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

I.   Facts Pertaining to Defendants' Motion for Partial Summary Judgment

Biometrics is the science of establishing human identity based on physical or behavioral traits, such as fingerprints, facial recognition, and iris recognition. Bavarian Dec. ¶ 1. Plaintiff E-Smart was formed in 2000 for the purpose of developing and marketing a biometric identification

verification system. First Amended Complaint ("FAC") ¶ 2. A key component of E-Smart's system is its proprietary "smart card." Id. ¶ 22. Defendant Drizin helped develop E-Smart's technology and, until about June 2006, was a consultant to E-Smart. See id. ¶ 3. By written assignment, Drizin and his co-inventors assigned all rights, title, and interest to E-Smart's technology to plaintiffs. Id. ¶ 3. Defendant Gardiner owns defendants Electronics Plastics Corporation and A Card Company. Id. ¶ 4. Gardiner and one or more of his companies were at one time involved in the manufacture of E-Smart smart cards. Id.

There was a falling-out between E-Smart on the one hand, and Drizin and Gardiner on the other. Drizin announced his "resignation" from E-Smart in June 2006. See id. ¶ 40. Plaintiffs allege that Drizin and Gardiner then engaged in a course of conduct that involved stealing E-Smart's valuable trade secrets, tangible property, and business opportunities, and using them to compete against E-Smart. Plaintiffs allege, for instance, that Drizin met with representatives of Bank DKI Indonesia and attempted to compete for a contract for which E-Smart had already negotiated for more than a year. See id. ¶ 42-50. At the time, Drizin was allegedly in possession of E-Smart smart cards and technology and offered to deliver E-Smart technology to the bank. Id. ¶ 46. Plaintiffs also allege that Gardiner and Drizin remained in possession of operational E-Smart cards and refused to surrender them. See id. ¶¶ 56-59.

Plaintiffs filed their initial complaint on September 11, 2006. On November 3, 2006, defendants filed their answer and counterclaim. Plaintiffs answered the counterclaim on November 28, 2006. Plaintiffs filed their initial trade secret designation on November 13, 2006, and filed supplemental designations on December 11, 2006, and March 15, 2007. On May 1, 2007, the court appointed Dr. A. J. Nichols to serve as Special Master, to assist the parties in resolving their disputes regarding discovery and the designation of trade secrets. The Special Master issued an order concerning the identification of trade secrets on January 4, 2008. This order provided the final designation of plaintiffs' trade secrets, describing nine separate trade secret designations. Defendants filed the instant motion for partial summary judgment on May 12, 2008.

II.     Facts Pertaining to Plaintiffs' Opposition to Douglass's Motion to Withdraw

On October 21, 2008, counsel for defendants filed a motion for leave to withdraw as counsel.[1]  Plaintiffs conditionally oppose the motion as to defendants' attorney Patricia D. Douglass.

At the start of this action, plaintiffs were represented by Maranda E. Fritz, of the Hinshaw & Culbertson LLP law firm.  Defendants have until now been represented by Patricia D. Douglass and two lawyers from the Stoel Rives LLP law firm.  In the spring of 2008, difficulties arose in the E-Smart-Hinshaw relationship.  As noted, defendants filed their motion for partial summary judgment on May 12, 2008.  Thereafter, Fritz asked defendants for multiple extensions of time to respond.  See Douglass Dec. ¶¶ 4-9.  On July 31, 2008, Donald J. Putterman of the Kasowitz, Benson, Torres & Friedman LLP law firm filed a substitution of counsel notice, substituting his firm's lawyers as counsel for E-Smart and IVI Smart.  The court ordered the substitution on August 5, 2008.  Docket Number 201.

In the meantime, Michael Gardiner and an entity not named in the instant action had filed a complaint in the Southern District of California seeking a declaratory judgment that their products did not infringe a patent owned by IVI Smart.  IDSmart LLC & Michael Gardiner v. IVI Smart Technologies, No. 07CIV1947 JLS (AJB) (S.D. Cal.) (hereinafter "the Southern District action"); see also Landry Dec., Exh. D (Sept. 29, 2008, Order of Hon. Janis L. Sammartino) (hereinafter "Sammartino order") at 4.  On August 18, 2008, Fritz asked Putterman by email whether Putterman was also preparing a motion for substitution of counsel in the Southern District action.  Putterman Dec. ¶ 3.  Putterman replied that his firm was *not* prepared to substitute into that case.  Id.  On August 29, 2008, Fritz filed a motion in the Southern District to withdraw as counsel for IVI Smart.  Id. ¶ 4.

On September 11, 2008, Putterman "specially appeared" before Judge Sammartino for the purpose of filing a conditional opposition to Fritz's withdrawal motion.  Id.  In his pleading, Putterman petitioned the court to condition the Hinshaw firm's withdrawal on the delivery to IVI Smart of documents related to the proceeding, and on the continuation of Hinshaw as IVI Smart's counsel until October 15, 2008, or until other counsel had been found.  Id., Exh. B (Putterman

1 motion) at 1.  Putterman's pleading asserted that such an order was "necessitated by the improper
2 conduct in which the Hinshaw firm and its lead counsel herein, Maranda E. Fritz, Esq., already have
3 engaged in a parallel proceeding pending in the Northern District of California."  Id.  Putterman
4 accused the Hinshaw firm of failing to turn over files and of doing no work on the opposition to
5 defendants' partial motion for summary judgment while time was allowed to run.  See id.
6 Putterman's filing also asserted that Fritz had become "personally involved in a regulatory matter
7 which implicated other work she had performed on behalf of e-Smart," id. at 2, and that "Hinshaw's
8 conduct appears to be intentional and motivated by personal animus on the part of Ms. Fritz toward
9 both new counsel and the client," id. at 4.  Putterman had included similar statements, including a
10 statement that the attorney-client relationship between E-Smart and Fritz "began to deteriorate," in a
11 stipulated order to continue dates, ordered on August 12, 2008, in the instant case.  See Docket
12 Number 203.

13     On September 23, 2008, Fritz filed a declaration in the Southern District action ("Fritz
14 Declaration").  Fritz declared that the record before the court was incomplete and misleading, and
15 she recited allegations to defend herself against the charges being leveled at her and her firm by E-
16 Smart through their new counsel.  Douglass, who considered it part of her job to monitor the status
17 of cases related to the instant action, accessed the PACER electronic case management system on
18 the same day the Fritz Declaration was filed and downloaded the declaration.  Douglass Dec. ¶¶ 15-
19 17.  At that point, the document was not under seal and was publicly available to anyone with a
20 PACER account.  Id. ¶ 17.  Douglass forwarded copies of the declaration to the Enforcement
21 Division of the Securities and Exchange Commission (SEC) on September 24 and to Larry
22 Wechsler, who is private counsel to multiple E-Smart board members, on September 25.  See
23 Putterman Dec., Exh. M (Douglass email).

24     On September 25, 2008, Putterman filed an *ex parte* application requesting that the Fritz
25 Declaration be stricken or, in the alternative, sealed, and further noted that if the court granted a
26 long-pending motion to dismiss, the issue would become moot.  Putterman Dec., Exh. J.  The motion
27 papers claimed that the Fritz Declaration contained privileged attorney-client communications.  Id.
28

4

1  They asked Judge Sammartino for an order prohibiting any further dissemination of the declaration
2  and prohibiting retention or use of the document by defendants or any person to whom it had been
3  transmitted. Id. Four days later, the court dismissed the case, finding that there was no substantial
4  controversy of sufficient immediacy to warrant declaratory judgment. Sammartino Order at 14. The
5  court also wrote:

> Because the dismissal for lack of subject matter jurisdiction **CONCLUDES** this litigation, the Court **DENIES AS MOOT** Hinshaw & Culberston, LLP's motion to withdraw as counsel for the defendant.
> Finding that each "Declaration of Maranda E. Fritz in Further Support of Motion to Withdraw as Counsel" contains confidential attorney-client communications, the Court finds good cause to seal these declarations in order to prevent defendant from being harmed or prejudiced by the disclosure of these communications. [Citation omitted.] Therefore, the Court **GRANTS** defendant's motion to seal these declarations and **DIRECTS** the Clerk to seal Document Numbers 28 and 30. The Court **DECLINES** to order the additional relief requested by Kasowitz Benson (specially appearing on defendant's behalf).

Id.

Now pending is the motion by defense counsel to withdraw from representing plaintiffs in the instant action. Current counsel for the plaintiff does not object to the unconditional withdrawal of the Stoel Rives attorneys but asks the court to "retain[] jurisdiction" over Douglass.

LEGAL STANDARD

I.   Summary Judgment

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue for which the

1 opposing party will have the burden of proof at trial, the moving party need only point out "that
2 there is an absence of evidence to support the nonmoving party's case." Id.

3 Once the moving party meets its initial burden, the nonmoving party must go beyond the
4 pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
5 genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving
6 party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th
7 Cir. 1994). The court may not make credibility determinations, Anderson, 477 U.S. at 249, and
8 inferences drawn from the facts must be viewed in the light most favorable to the party opposing the
9 motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

## II. Withdrawal of Counsel

"Counsel may not withdraw from an action until relieved by order of the Court after written notice has been given reasonably in advance to the client and to all other parties who have appeared in the case." Civil Local Rule 11-5(a). Certain conditions may be imposed on withdrawal. See id., Rule 11-5(b).

## DISCUSSION

Defendants move for partial summary judgment on plaintiffs' second, fifth, and sixth causes of action. Defendants also petition the court to rule that injunctive relief is an inappropriate remedy for certain trade secret designations. Separately, defendants' counsel have moved to withdraw.

## I. California Uniform Trade Secrets Act (UTSA) (E-Smart's Second Claim)

Defendants contend that almost all of E-Smart's alleged trade secrets are already available in the public domain. In support of their position, defendants point to a veritable encyclopedia of public domain evidence purportedly demonstrating that nine of the eleven trade secrets at issue in this case are no longer secret. According to defendants' expert, Mr. Henry N. Dreifus, none of the nine designations contains technology that was not known or obvious to people in the industry at the

time of the alleged misappropriation. See Dreifus Dec. ¶¶ 14, 20, 22, 24, 26, 29, 32, 35 & 37.[2] Dreifus generally avers: "[T]he basic parameters, components, schematics, and designs for a biometric smart card have been and are readily known to those in the industry and available to anyone with Internet access. Thus, it is difficult to find a biometric smart card with a truly protectable iteration or without well-known technology." Id. ¶ 9. Through Dreifus's testimony and the documentary evidence presented, defendants meet their threshold burden of pointing to the absence of a genuine issue of material fact.

Plaintiffs argue, however, that important genuine issues of material fact remain for each of the nine challenged designations. Plaintiffs offer the testimony of Dr. Behnam Bavarian, along with their own library of exhibits, to show that Dreifus and defendants have it wrong. According to Bavarian, Dreifus's analysis suffers from no less than four major flaws. Bavarian argues that Dreifus "focuses on the general concepts of biometric smart cards, but fails to address the specifics of *how* eSmart has proposed to produce an actual biometric smart card." Bavarian Dec. ¶ 12. Second, Bavarian states that Dreifus confuses the question of knowing what components make up a biometric smart card with that of knowing how to integrate those components into a working product. Id. ¶ 13. Third, Bavarian claims that Dreifus misunderstands the fundamental differences between the different elements out of which a biometric smart card is made. Id. ¶ 14. Bavarian's final general criticism is that Dreifus trivializes the technical difficulty of creating a biometric smart card, a field of endeavor which Bavarian characterizes as being "on the leading edge of technology." Id. ¶ 15. After lodging his general objections to Dreifus's analysis, Bavarian proceeds to offer detailed technical explanations as to why the publicly accessible materials offered by defendants for each of the nine trade secret designations fail to demonstrate that the trade secrets had been revealed to the public at the time of the alleged misappropriation. Id. ¶¶ 16-110.

Rule 56 is not intended to enable trial by affidavit. See Anderson at 242-243 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."). Through the offer of Bavarian's detailed and reasoned testimony and the evidence upon which it relies, plaintiffs have succeeded in "set[ting] forth specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e).

In their reply, defendants advance several creative arguments in an attempt to avoid denial of their motion. They contend that plaintiffs have somehow attempted to re-define their trade secrets by arguing that the sum of a trade secret is more than its parts—to use Bavarian's illustration, that a recipe for chicken soup involves proper timing, temperature, and quantities, not just a list of ingredients. See Bavarian Dec. ¶ 13. Defendants argue that combinations of parts cannot be part of the trade secrets because only one of the nine designations (designation I) even uses the word "combination." Reply at 5.

Whether the word "combination" was or was not used is irrelevant. The special master incorporated patent applications and exhibits by reference into the trade secret designations. See Order of the Special Master Concerning Identification of Trade Secrets, Jan. 4, 2008, at 6-8. These applications and exhibits do not list rosters of spare parts; rather, they describe inventions and processes. The Bavarian declaration at the least raises genuine issues of material fact as to whether the documents cited by Dreifus reveal that the trade secrets themselves, rather than some insignificant components, have been publicly exposed.

Defendants cite cases to support the proposition that plaintiffs have not adequately defined their trade secrets in terms of how specific elements are combined. These cases do not help defendants. Unlike the plaintiffs in Pixon v. Placeware, 421 F. Supp. 2d 1233 (N.D. Cal. 2005) (Illston, J.), E-Smart, with help from the Special Master, has written disclosures that reflect both a functionality and a "how to" for creating that functionality, primarily through the incorporation of the appropriate documents by reference. See id. at 1242. The case of VFD Consulting v. 21st Services, 425 F. Supp. 2d 1037 (N.D. Cal. 2006) (Armstrong, J.), is likewise inapposite. In that case, the plaintiff asserted that it, through an individual named Dolan, had made contributions to a life expectancy prediction system developed by the defendants, but the court found there to be no

evidence of any such contribution. Id. at 1049. Dolan had admitted that the information she provided for the project was publicly available, but the plaintiffs argued that the information was a trade secret because it was selected using Dolan's "unique experience." Id. The court held that the plaintiffs had to describe this sort of alleged trade secret, which was based solely on a novel arrangement of publicly available information, with greater particularity than the plaintiff had done. Id. In the instant case, plaintiffs have not admitted—indeed, have fiercely disputed—that the underlying information defendants allegedly misappropriated was publicly available. Unlike VFD Consulting, there remain genuine issues of material fact as to whether individual components themselves are publicly available. The case of Litton v. Sunstrand, 750 F.2d 952 (Fed. Cir. 1984), does not help defendants either. In that case, the court affirmed the district court's decision not to issue a preliminary injunction, finding that the plaintiff's "Achilles Heel" on that record was that it had insisted on postponing the identification or description of thousands of unidentified trade secrets so as to require an extraordinarily sweeping injunction. Id. at 956. That is nothing like this case.

Defendants also reply that any and every combination of elements present in the designations would be "obvious" to individuals working in the field at the time of the alleged appropriation. Indeed, a trade secret requires "some degree of novelty or 'unknownness.'" Strategic Directions Group v. Bristol-Myers Squibb, 293 F.3d 1062, 1065 (8th Cir. 2002). However, this question of novelty must be based upon factual determinations, and plaintiffs have raised genuine issues of material fact.

Defendants' Motion for partial summary judgment on plaintiff's second cause of action, violation of the California trade secret law, is DENIED.

II.     Injunctive Relief

In their motion for partial summary judgment, defendants also argue that even if plaintiffs should prevail on their trade secret claims, they are not entitled to injunctive relief protecting alleged secrets that are currently in the public domain. Defendants state that the sole support for designations VII, VIII, and XIVa is patent application 60/709,981, which was published in February

9

1  2007.  Plaintiffs counter that the disclosure of the trade secrets at issue does not foreclose injunctive
2  relief.  See Cal. Civ. Code § 3426.2(a) ("Upon application to the court, an injunction shall be
3  terminated when the trade secret has ceased to exist, but the injunction may be continued for an
4  additional period of time in order to eliminate commercial advantage that otherwise would be
5  derived from the misappropriation.").
6  It is premature at this time to foreclose any particular remedy.  There has been no
7  determination whether defendants misappropriated plaintiffs' trade secrets.  As defendants note, the
8  court has already ordered defendants, per stipulation, not to use any E-Smart proprietary technology
9  or trade secrets.  See Docket Number 42 (joint stipulation and order).  This fact does not provide a
10 basis for the court to foreclose a particular remedy before the merits of the litigation have even been
11 fully adjudicated.
12 Defendant's motion is DENIED insofar as it seeks a ruling on the appropriateness of
13 injunctive relief.
14
15 III.    Unfair Competition and Misappropriation/Conversion (E-Smart's Fifth and Sixth Claims)
16 Defendants also move for summary judgment on plaintiffs' fifth and sixth claims, see
17 Complaint ¶¶ 95-109, to the extent that they are based upon trade secret misappropriation.  In a rare
18 feat of consensus, the parties basically agree on the scope of the California UTSA's preemption of
19 common law torts.  Both parties cite Digital Envoy v. Google, 370 F. Supp. 2d 1025 (N.D. 2005)
20 (Seeborg, Mag. J.), although defendants misquote the test applied in that case.  In Digital Envoy, the
21 plaintiffs brought claims of unfair competition and unjust enrichment along with their UTSA claims.
22 Id. at 1029.  The court ruled that the UTSA preempted the common law claims and granted the
23 defendant's motion for partial summary judgment.  Id. at 1035.  In that case, however, the plaintiff's
24 claims for relief were "based on *identical* facts alleged in its claim for misappropriation of trade
25 secrets."  Id. (emphasis added).  In the instant case, plaintiffs have alleged facts relating not only to
26 defendants' alleged misappropriation of their intellectual property, but also to misappropriation of
27 business opportunities, see, e.g., Complaint ¶¶ 42-50, and conversion of tangible items, see, e.g.,
28

Complaint ¶¶ 56-59. To the extent that the unfair competition and conversion claims rely upon allegations of something other than misappropriation of trade secrets, those claims cannot be preempted by the UTSA.

Defendants' motion for summary judgment on the common law unfair competition and misappropriation/conversion claims is GRANTED to the extent that those claims rely upon allegations of trade secret misappropriation and DENIED to the extent that they do not.

IV.     Withdrawal of Defense Counsel

Plaintiffs argue that defense counsel had been on notice of a deterioration of the attorney-client relationship between E-Smart and Fritz since August 2008. As such, contend plaintiffs, Douglass should have known that Fritz's declaration, publicly filed in the Southern District, contained privileged attorney-client information. Plaintiffs assert that Douglass had a duty to refrain from reading or distributing the filing.

Douglass counters that the declaration in question was filed and publicly available. She claims that the Fritz Declaration did not appear to reveal any communication for the purpose of obtaining legal advice, the substance of any legal advice imparted to E-Smart, or any discussion of legal strategy. Douglass further contends that she disseminated the Fritz declaration for legitimate reasons, namely (1) to inform the E-Smart board of directors about alleged misrepresentations of settlement discussions which she felt an exhibit to the Fritz Declaration brought to light, and (2) to inform the SEC of the pubic release of information about its ongoing non-public investigation of E-Smart. Douglass avers that she has made no use whatsoever of the Fritz Declaration since Judge Sammartino's order to seal was filed, other than to retain a copy for use "in the event of additional delaying motions" or to defend herself against the allegations made by plaintiffs in the context of this motion. Douglass Dec. ¶ 27.

Plaintiffs request that the court "retain jurisdiction" over Douglass to determine (1) whether she engaged in misconduct through her publication of the Fritz Declaration; (2) whether Fritz and Douglas somehow conspired to publish and use the communications; and (3) what use has been

11

1 made of the publication, if any, by defendants. There is no evidence before this court of a
2 conspiracy or of any improper use of the Fritz Declaration by Douglass or defendants after the entry
3 of the sealing order. If any party has violated the sealing order or violates it in the future, that is an
4 issue to be taken up before Judge Sammartino. The only question properly before this court is
5 whether Douglass engaged in misconduct relating to her publication of the Fritz Declaration prior to
6 the entry of the sealing order.

7 Plaintiffs rely on Rico v. Mitsubishi Motors Corp., 42 Cal.4th 807 (2007), which reaffirmed
8 the California standard for the protection of privileged information articulated in State Comp. Ins.
9 Fund v. WPS, Inc., 70 Cal. App. 4th 644 (1999), for the proposition that Douglass had a duty not to
10 read or distribute the Fritz declaration. Even assuming that it is appropriate to look to state law in
11 this case,[3] Rico is (wildly) inapposite. In that case, one of the plaintiffs' attorneys inadvertently
12 came into possession of notes of a discussion between opposing counsel and their expert witness.
13 See Rico at 811-812. Although the document was not labeled as attorney work product, it was
14 "absolutely privileged" by the attorney work product rule, as would be apparent at first glance. See
15 id. at 813. Upon finding the document, the plaintiff's attorney not only failed to notify defense
16 counsel, but gave copies of the document to co-counsel and the plaintiffs' expert witnesses, and used
17 the document in deposing the defendant's expert. Id. at 812. The court found that the plaintiffs'
18 attorney acted unethically by failing to notify defendants and instead "surreptitiously using it to gain
19 maximum adversarial value from it." Id. at 813.

20 In this case, Douglass obtained the Fritz Declaration through perfectly legitimate means: by
21 reading a public filing. It would be an odd result, indeed, if the court began to place restrictions on
22 the ability of attorneys to read documents publicly filed in related cases. Moreover, unlike the
23 attorney in Rico, Douglass did not use the disclosure to gain an advantage in litigation. Sending the
24 document to counsel for E-Smart's own board members certainly cannot constitute a disclosure of
25 E-Smart's privileged communications. Disclosure to the SEC, while undoubtedly calculated to
26 encourage SEC scrutiny of E-Smart, is hardly equivalent to the uses to which the privileged material
27 in Rico was put. In any event, Douglass disclosed the declaration to the SEC on September 24,
28

12

2008, before the declaration was sealed or plaintiffs had even filed their motion to strike or seal. Putterman admits that he did *not*, on or before September 24, contact Douglass to request that she not disseminate the document. Putterman Dec. ¶ 13. Rico is also distinguishable insofar that it applied the standard of California Code of Civil Procedure section 128.5, which has been superceded and applies only to cases filed before 1995. See Olmstead v. Arthur J. Gallagher & Co., 32 Cal.4th 804, 812 (2004).[4]

Plaintiffs selectively quote the State Fund/Rico standard to support their broad assertion that an attorney who "receives materials that obviously appear to be . . . confidential and privileged" must refrain from examining those materials any more than necessary to ascertain privilege. Opp. at 8. They fail to note that the very same sentence describes "materials [that] were provided through inadvertence." Rico at 817. The Rico court continues, "[T]he lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged." Id. The Fritz Declaration was not an errant fax or email; at the time Douglass downloaded and forwarded it, it was available to the world at large. It would make no sense for Douglass to call Fritz and warn her that she, Douglass, possessed material that appeared to be privileged. Fritz had knowingly placed the material in a publicly available location.[5]

To the extent that defense counsel have gained any unfair advantage over plaintiffs by coming into possession of the information in the Fritz Declaration, such advantage is more than adequately remedied by the imminent withdrawal of defense counsel. The defendants need some time to obtain other counsel and/or decide how to move forward from here. Therefore, the motion to withdraw will deferred until March 1, 2009, at which time the court anticipates the motion will be granted.

CONCLUSION

Defendants' motion for summary judgment of no violation of the California UTSA is DENIED in its entirety. Defendants' motion for summary judgment on the common law unfair competition and misappropriation/conversion claims is GRANTED in part and DENIED in part. Defendants' motion relating to the appropriateness of injunctive relief is DENIED as premature. Defense counsel's motion to withdraw is deferred until March 1, 2009. Douglass's motion for costs is DENIED.

IT IS SO ORDERED.

Dated: January 5, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. An amended motion was filed the following day.

2. Dr. Dreifus does mention one exception: the method of mapping four points in a square around the fingerprint nucleus described under Designation X (Matching Algorithm). Dreifus Dec. ¶ 26. Defendants stated via attorney argument that they are not practicing this method. Mot. at 18.

3. Plaintiffs cite no federal court cases, instead stating that state law governs the applicability and scope of attorney-client privilege in federal cases grounded in diversity jurisdiction. Plaintiffs rely upon In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997), to support this proposition. The Ford court read Federal Rule of Evidence 501 to mean that state law governed whether information was privileged for the purpose of determining whether it must be produced to an opposing party. The issue in this case is not so simple, because the question is not whether the information in the Friz Declaration should have been turned over to an opposing party, but rather whether Douglass violated some duty by disseminating the information after it had been filed. Plaintiff has cited no authority suggesting that, in such a case, a federal court would not apply federal law in its decisions regarding the discipline of attorneys appearing before it.

4. Plaintiffs filed a statement of recent decision attaching the slip opinion from Wallis v. PHL Assocs., Inc., No. C056200 (Cal. App. Nov. 25, 2008). Wallis likewise applied section 128.5. Wallis is also distinguishable in that a protective order was in place covering the information in question at the time of its dissemination. Id. at 5.

5. The court does not opine one way or the other on whether *Fritz*'s actions comported with her professional responsibilities, as that issue is not before the court. The court in the Southern District action has already reviewed the contents of the Fritz declaration and would undoubtedly have disciplined Fritz had the court determined that discipline was appropriate.