**United States District Court**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E-SMART TECHNOLOGIES, INC., a Nevada Corporation, and IVI SMART TECHNOLOGIES, INC., a Delaware Corporation,

    Plaintiff(s),

vs.

WAYNE DRIZIN, MICHAEL GARDINER, ELECTRONIC PLASTICS CORPORATION, and A CARD COMPANY,

    Defendant(s).

No. C-06-05528 MHP

**ORDER RE CONTEMPT AND SANCTIONS**

    This action was referred to the Honorable William B. Shubb, a District Court Judge of the Eastern District of California for adjudication of an Order to Show Cause re Criminal or Civil contempt ("OSC") issued by this court with respect to the disappearance of a biometric smart card manufactured by Fidelica ("Fidelica card") during a settlement conference with Magistrate Judge Bernard Zimmerman of this court.[1]  The United State Attorney having declined prosecution, the court appointed the law firm of Taylor & Co., attorneys Stephen E. Taylor and Jonathan Alan Patchen, to serve *pro bono* and prosecute the matter.  This court ultimately determined that the OSC should proceed as a civil contempt.

    Judge Shubb conducted a hearing and rendered his decision in a Memorandum and Order re:Civil Contempt filed on May 18, 2011.  He returned the matter to this court for "all further

proceedings, including determination of the appropriate remedy to enforce this Order". Dkt.No. 380 at 20.

Some history of this action is necessary to understand the background of this case. This action was filed on September 11, 2006. A number of claims are alleged, but the principle gravamen of the complaint is that defendants, former employees of plaintiff e-Smart Technologies, Inc. ("e-Smart") and associates of plaintiff's Chief Executive Officer, Mary Grace, stole trade secrets from the plaintiffs. Nearly five years and fifty-two pages of docket entries later, little has been accomplished other than bickering and sniping. Plaintiffs are on their fourth set of attorneys; defendants, who were previously represented, claim they cannot afford counsel and are representing themselves.

It took over a year and finally the appointment of a Special Master to obtain any clear definition of the trade secrets at issue. Plaintiffs were unable to articulate a clear enumeration and description of the trade secrets and included many items that were purported trade secrets, but, in fact, were not. The Special Master worked mightily to extract from the myriad of ones presented to him by plaintiff what could reasonably be described as actual trade secrets.

The litigation was stymied with each side substituting new counsel on more than one occasion. Motions, not in furtherance of the litigation but exacerbating the dispute, and abortive efforts at settlement consumed much of the time. Case management conferences often were conducted by phone since one defendant fequently was out of the country, although he did make himself available by phone. However, getting the attention of the necessary principals of plaintiff for settlement or productive litigation efforts consumed more time. Finally, at yet one more attempt at settlement, Judge Zimmerman convened the parties for a settlement conference on August 13, 2010, four years after the filing of this action. It is that settlement conference that gave rise to the conduct at issue in the OSC and has been adjudicated by Judge Shubb.

After a four-day hearing Judge Shubb found e-Smart in civil contempt. *Id*. at 4:26. He also found Mary Grace in contempt of court for failure to comply with Judge Zimmerman's order dated August 13, 2010. In the course of the hearing Judge Shubb took testimony from Judge Zimmerman

the defendants, Wayne Drizin and Michael Gardiner, the CEO of plaintiff, Mary Grace, and other of its officers and employees, as well as other witnesses proffered by each of the parties. The findings made by Judge Shubb are very instructive in suggesting the appropriate remedies this court should impose. The Judge noted that "credibility was a central issue at the hearing". *Id*. at 6, n.3. He proceeded to determine the facts related to the settlement conference and those that related to the response to the August 23, 2010 order. The court will not repeat those here, for the Memorandum and Order speaks for itself. The conclusions reached and assessment of the testimony and conduct are what inform this court's decision with respect to the appropriate remedies.

Judge Shubb stated that he "did not find Drizin to be a credible witness and finds him, like Grace, to display the typical characteristics of a con-artist." *Id*. at 8:4-6. Ultimately he concluded, however, that neither Drizin nor Gardiner, whose credibility he also evaluated, were responsible for the lost evidence. He was not so impressed with the credibility of Mary Grace, whose testimony he found "amorphous and appeared to develop as she testified". *Id*. at 9:7-8. The Judge's Memorandum and Order is replete with references to her "non-responsive" testimony, "ever-changing story", her demeanor on the stand and her motive for stealing the card ("Grace felt justified in simply taking back what she asserted belonged to her company", namely the Fidelica card). *Id*. at 9-11. Judge Shubb gave this assessment of her character and credibility, "Grace's testimony and demeanor also persuade the court that she has skated through her various ventures as a flim-flam artist who fabricates information in an attempt to extort a profit." *Id*. at 11:9-12:2.

Judge Shubb concluded that the Special Prosecutor had established by clear and convincing evidence that Mary Grace had stolen the card and that she and e-Smart, therefore, were in contempt of court. *Id*. at 5-6, 19:2-5.

There also are other holdings and observations of the Judge that inform this court's decision with respect to the appropriate remedies. These are poignantly pointed out on pages twelve and thirteen of the Judge's Memorandum and Order. "The court was unpersuaded, however, that e-Smart is anything more than a sham company or that Grace's concern for its shareholders extends beyond the financial gain they bring her." *Id*. at 12:15-17. Quoting "Grace's comment about her

3

strategy [the Judge observed] also reflects her use of litigation as an improper business tool: 'I believe if we can put the pressure of a second law suit on both Gardiner and Drizin, that we can resolve both suits exponentially [sic]'." *Id.* at 12:26-13-2.  This, along with her demeanor and other testimony, convinced the Judge that "Grace views the judicial process as a mere tool to conduct business rather than an avenue to resolve disputes." *Id*. at 12:19-20.  Indeed, Judge Zimmerman "testified that he was under the impression that Grace was not negotiating in good faith during the settlement process." *Id*. at 12:21-25.

There are essentially two types of sanctions that may be imposed upon a finding of civil contempt: coercive sanctions to compel obedience to a court order or compensatory sanctions to redress losses sustained by the adversary.  *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947).  Sanctions in a civil contempt are intended to be remedial.  In determining the appropriate sanction here, the court considers this Circuit's civil contempt cases and sanctions cases under both the court's inherent power and Rule 37 of the Federal Rules of Civil Procedure.  *See,e.g., Lasar v. Ford Motor Co.*, 399 F,2d 1101, 1109-11 (9th Cir. 2005); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 73-84 (9th Cir. 1983).  As with sanctions under the court's inherent powers or Rule 37, contempt sanctions must comport with due process standards.  *Lasar*, 399 F.3d 1110, n.5; *Falstaff Brewing*, 702 F.2d at 783-84 nn.8 & 9.  The sanctions should also be proportionate to the conduct addressed and tailored to necessarily redress that conduct.

Plaintiff, in this case, has been afforded its due process rights, having been given notice of the contumacious conduct and the fact that it faced sanctions of dismissal of the action, and given a full opportunity to be heard as described in the Memorandum and Order.

A thorough reading of Judge Shubb's Memorandum and Order, particularly considering the salient portions quoted or referenced above, persuades the court that dismissal of this action is the appropriate remedy.  It is obvious that coercive measures are not available here because from the Memorandum and Order it appears that compliance with the order in issue cannot be achieved. The Fidelica card was found to have been taken by plaintiff; it was not returned as required by the order; it is still missing and is not likely to be returned.   The other sanction that may be imposed is

4

compensatory. In this case dismissing the action with prejudice is compensatory in nature, for the defendants are relieved of the expense and burden of further litigation. It is also the penalty contemplated by the OSC and of which plaintiff was given notice by that Order. While dismissal may be considered harsh, it takes into consideration the magnitude of the offensive conduct, CEO Grace's lack of credibility on the stand, and the attitude of the plaintiff and its CEO toward this litigation, the parties and the court, including the Magistrate Judge who states that he spent more hours attempting to settle this case than on any other case he has had. Dkt. No.380 at 12.

In dismissing an action or in ordering default as a sanction or penalty, the court should determine (1) the existence of extraordinary circumstances; (2) the presence of wilfulness, bad faith, or fault by the offending party; (3) the efficacy of lesser sanctions; and (4) the relationship of the misconduct and the matters in controversy; (5) prejudice to the party-victim of the misconduct; and (6) the government interests at stake.. *See Estrada v. Speno & Cohen*, 244 F.3d 1050 (9th Cir. 2001); *see also Halco Engineering Co. v. Costle*, 843 F.2d 376 (9th Cir. 1988).

In sanctions cases whether under the court's inherent power or pursuant to Rule 11 or Rule 37 of the Federal Rules of Civil Procedure, dismissal is considered a drastic sanction. Nevertheless, it is justified where there is willfulness, fault or bad faith on the part of the sanctioned party. *See, e.g., Valley Engineers Inc., v. Electric Engineering Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998)("facts of the case show dishonesty, not just recalcitrance and delay"); *Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334, 1337 (9th Cir. 1985).

This case demonstrates an extreme set of extraordinary circumstances and bad faith. It appears from the CEO's testimony that the case was brought more as a punishment against defendants, or in the words of its CEO as a "business tool". This is an abuse of the judicial process and essentially amounts to an unfair business practice. This is borne out by the manner in which this case was litigated, for example, being unresponsive to discovery and asserting theft of trade secrets but failing to clarify exactly what they were. In fact, the court was required to appoint a Special Master who, although knowledgeable about the technology, struggled to get answers from the plaintiff and concluded that many of the answers did not consist of real trade secrets. This is not to

say that defendants are not without fault in this case. Nonetheless, their transgressions do not compare with those of the plaintiff in their approach to the litigation of this case. Judge Shubb's Memorandum and Order is replete with evidence of bad faith, willfulness and fault, so much so that plaintiff and its CEO have been found in contempt of court.

Any lesser standard than dismissal of this action would result in continuing this litigation, litigation which smacks of bad faith and has been conducted by plaintiff in that fashion. Monetary sanctions or exclusion of evidence will only multiply this litigation.

The nexus between the sanction of dismissal and the offending conduct in this case is apparent. The contumacious conduct of plaintiff to date suggests that there is little merit to this case. This is not a situation where there are discovery failures or abuses that may go to only a part of the case and that can be cured by more tailored remedies. The misconduct in this action goes to the heart of the case.

As a result of this misconduct, defendants have incurred unnecessary expenditures and time. They no longer have counsel because they assert they are no longer able to afford counsel, litigation expenses having mounted. Defendant Gardiner has made a number of trips from the Middle East to participate in these proceedings.

Finally, the attitude to these proceedings by the plaintiff's CEO, as discussed above and at greater length in Judge Shubb's decision, strikes at the heart of the legitimate interests of the judicial branch of our government. That attitude has infected the length and tenor of these proceedings. The CEO's glib attendance to the truth and the use of the courts for her ends are directly at odds with the purpose of achieving a just resolution fairly, efficiently, speedily and inexpensively as mandated by the very first Rule of the Federal Rules of Civil Procedure. Fed.R.Civ.P. Rule 1.

Therefore, for the foregoing reasons,

IT IS HEREBY ORDERED that this action is DISMISSED with prejudice.

IT IS FURTHER ORDERED that Taylor&Co. may file within ten (10) days of the filing of this order a declaration certifying to the attorneys' fees and costs incurred in prosecuting the OSC

1 along with supporting documentation. Plaintiff shall file within twenty (20) days of such filing its
2 objection, if any.

Date: May 24, 2011

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Since it was necessary for Judge Zimmerman to testify at the hearing, being the primary witness for the prosecution of the OSC, an out-of-district judge was assigned by the Chief Judge of this Circuit to conduct the hearing.